Preston NEWMAN et al., Plaintiffs,

v.

Fred CONOVER et al., Defendants.

Civ. A. No. 3–3134,
Dallas Division.

TEXAS BOOKMARK CORPORATION et al., Plaintiffs,

v.

Thomas A. CURTIS et al., Defendants.

Civ. A. No. 3–3604,
Amarillo Division.

Alton WEST, Plaintiff,

v.

Blair CHERRY, Jr., et al., Defendants.

Civ. A. No. 3–3605,
Lubbock Division.

TEXAS BOOKMARK, INC., et al., Plaintiffs,

v.

Blair CHERRY, Jr., et al., Defendants.

Civ. A. No. 3–3606,
Lubbock Division.

CINNE ARTS THEATRES, INC., et al., Plaintiffs,

v.

Frank DYSON et al., Defendants.

Civ. A. No. 3–3766–C,
Dallas Division.

United States District Court,
N. D. Texas,
Dallas Division.
June 3, 1970.

Mel S. Friedman, Houston, Tex., Stanley Fleishman, Hollywood, Cal., Harris Hampton, Dallas, Tex., Minor Pounds, Phil Brummett, Lubbock, Tex., for plaintiffs.

N. Alex Bickley, City Atty., Thomas Thorpe, Asst. City Atty., Henry Wade, Dist. Atty., Wilson Johnston, Asst. Dist. Atty., Dallas, Tex., Naomi Harney, County Atty., Amarillo, Tex., J. Blair Cherry, Jr., Dist. Atty., Thomas J. Purdom, County Atty., Lubbock, Tex., Crawford C. Martin, Atty. Gen., Nola White, First Asst. Atty. Gen., Alfred Walker, Executive Asst. Atty. Gen., Robert C. Flowers, Jay Floyd, Lonny F. Zwiener, Asst. Attys. Gen., Austin, Tex., for defendants.

Before GOLDBERG, Circuit Judge, and HUGHES and WOODWARD, District Judges.

## MEMORANDUM OPINION AND JUDGMENT

WOODWARD, District Judge.

Plaintiffs in these cases are seeking declaratory relief and injunctive protection under Section 1983, Title 42, United States Code, which permits civil actions for deprivation of rights. Involved is

the constitutionality of Article 527 of the Texas Penal Code, Vernon's Ann., as amended in June of 1969. Revised Article 527 is entitled "Obscene articles" and prohibits, among other things, the distribution of obscene matter to adults.

To consider properly the constitutional questions raised in these cases, a three-Judge Court has been appointed under Section 2284, Title 28, United States Code. The cases have been consolidated and now this Court must examine the request for declaratory relief in the form of constitutional challenges to revised Article 527. After these issues are resolved, other requests for relief can be properly adjudicated. In this regard, Plaintiffs have filed Motions for Summary Judgment praying that revised Article 527 be declared unconstitutional while Defendants have filed Motions to Dismiss urging that no substantial constitutional questions have been raised. To determine the validity of these competing claims, each of Plaintiffs' allegations as to unconstitutionality raised in the motions and pleadings must be examined.

■ At the outset it should be noted that obscenity may be regulated by the States. The Supreme Court, Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), clearly holds so in the following language.

"The dispositive question is whether obscenity is utterance within the area of protected speech and press. Although this is the first time the question has been squarely presented to this Court, either under the First Amendment or under the Fourteenth Amendment, expressions found in numerous opinions indicate that this Court has always assumed that obscenity is not protected by the freedoms of speech and press." (page 481, 77 S.Ct. page 1307)

"We hold that obscenity is not within the area of constitutionally protected speech or press." (page 485, 77 S.Ct. page 1309)

Although some of the Plaintiffs in these cases have questioned the right of the State to regulate obscenity because of the prohibitions of the Constitution, it is clear that the State has such a right, and the questions to be disposed of here are whether such regulation in Texas has been accomplished in a constitutional manner by the enactment of Article 527 of the Texas Penal Code, as amended in 1969. The following portions of this opinion will be addressed to the constitutional questions raised by Plaintiffs.

1.

■ Plaintiffs assert that Section 3 of revised Article 527 is unconstitutionally overbroad in that it prohibits any person from publishing, preparing, printing, distributing or selling allegedly obscene material to adults for their private use.[1] As authority for this assertion, Plaintiffs cite the recent Supreme Court decision in Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969) and contend that such action prohibited above is protected under the guarantees of the First Amendment. Plaintiffs also rely on Stein v. Batchelor, 300 F.Supp. 602 (N.D.Tex.1969), where the old Texas obscenity law, Article 527 before amended in 1969, was struck down because, under Stanley v. Georgia, the statute was overbroad in that it failed to confine its application to a context of public or commercial dissemination. The prior statute proscribed, for example, the mere private possession of obscene material. After the *Stein* case was argued, the Legislature tried to correct this infirmity by prohibiting only the sale or distribution of obscene material or the possession of obscene ma-

---

[1]. Section 3 reads:

Every person who knowingly: sends or causes to be sent, or brings or causes to be brought, into this state for sale or distribution, or in this state prepares for distribution, publishes, prints, exhibits, dis-

tributes, or offers to distribute, or has in his possession with intent to distribute or to exhibit or offer to distribute, any obscene matter is guilty of a misdemeanor.

terial with the intent to sell or distribute. Possession alone is not an offense under the new statute. Under these circumstances, is Section 3 overbroad and thus constitutionally defective?

By affirming the decision in Gable v. Jenkins, 309 F.Supp. 998 (N.D.Ga., 1969), the Supreme Court has come very close to answering the above question. See 397 U.S. 592, 90 S.Ct. 1351, 25 L.Ed. 2d 595 (1970). In the *Gable* decision, written by a three-Judge Court, the following section from the Georgia statute prohibiting the distribution of obscene materials was challenged:

> "A person commits the offense of distributing obscene materials when he sells, lends, rents, leases, gives, advertises, publishes, exhibits or otherwise disseminates to any person any obscene material of any description, knowing the obscene nature thereof, or who offers to do so, or who possesses such material with the intent to do so." Article 26–2101(a), effective July 1, 1969.

This section of the Georgia statute is very similar to Section 3 of the Texas statute which reads:

> "Every person who knowingly: sends or causes to be sent, or brings or causes to be brought, into this state for sale or distribution, or in this state prepares for distribution, publishes, prints, exhibits, distributes, or offers to distribute, or has in his possession with intent to distribute or to exhibit or offer to distribute, any obscene matter is guilty of a misdemeanor."

In *Gable*, the Georgia statute was challenged on the ground that it was overbroad under the standard enunciated in *Stanley*. The Court stated: "Plaintiff divines several situations under which the working of 26–2101 might be overly broad, viz., a husband showing an obscene book to his wife, or consenting adults being prohibited from gathering in a private home to view an obscene film." Gable v. Jenkins, supra, 309 F. Supp. page 1000. Such an argument is rejected by the Court under its reading of *Stanley*. At page 1000, the Court writes:

> "*Stanley*, supra, gives a comprehensive study of Freedom of Expression guaranteed by the Bill of Rights to the Constitution and the intrusion of obscenity into this almost unlimited freedom. Obscenity, it was stated in *Roth*, supra, is not within the protected pale of the First and Fourteenth Amendments. However, *Stanley* tempers this broad mandate by the allowance of the private possession of obscene materials. As Justice Marshall stated in his concluding paragraph in *Stanley*: 'As we have said, the States retain broad power to regulate obscenity; that power simply does not extend to mere possession by the individual in the privacy of his own home.' These words indicate a conscious desire on the part of that Court to keep *Stanley* limited to its facts and no statements in the body of the opinion could logically be construed to encompass the contention of plaintiff."

After making the above comments, the three-Judge Court in the *Gable* case upheld 26–2101(a) and found it constitutionally valid by stating: "Without an illogical extension of *Stanley*, the Supreme Court decisions allowing the regulations of obscenity would appear to demand a holding that Georgia Code 26–2101 is constitutional." Since the Supreme Court affirmed this decision, it would seem reasonable to assume that it approves of the lower Court's construction of *Stanley*. For a different construction, see Comment, 48 Texas L. Rev. 646 (1970).

The differences in the Georgia and Texas statutes are, at most, minimal. The same challenges leveled against the Georgia statute have been leveled against the Texas statute and there is no reason to reach a result different here from the result reached in *Gable*. Under the circumstances, Section 3 is clearly constitutional.

**2.**

Plaintiffs further assert that Section 9 of Article 527 is unconstitutionally void on its face because it specifically authorizes the issuance of ex parte search and seizure warrants and also specifically authorizes seizure of allegedly obscene material without affording the affected party a prior adversary hearing on the issue of obscenity.[2] In this regard, Plaintiffs cite a recent three-Judge Court decision from the Western District of Texas, Fontaine v. Dial, 303 F.Supp. 436 (1969). In *Fontaine*, the Court was examining procedures employed to seize a film under the prior Texas obscenity law. Although the procedural section of the statute, Section 6, was not held unconstitutional, the procedures actually used were. The Court stated at page 440 of the opinion, that:

"The procedures defendants used in seizing the motion picture film, trailers, and display posters as evidence for future criminal prosecutions against plaintiff under Article 527, are hereby declared unconstitutional, and defendants are ordered to return the seized materials to plaintiff. In addition, defendants are prohibited from utilizing the provisions of Section 6 of said statute, unless a prior adversary hearing is afforded the party against whom 'any * * * writs and processes', including, but not limited to, search warrants, 'appropriate to carry out and enforce * * * this Act', are sought."

Since Section 9 of revised Article 527 had recently been enacted, the Court also examined it. In a footnote (n. 7) to the *Fontaine* opinion, the Court noted that:

"However, Section 9 of the revised Act still does not require a *prior* adversary hearing before the issuance of a search warrant in any kind of case. Even though the revised Act is not directly before this Court, it does appear that defendants should consider that the prohibition against utilizing the provisions of Section 6 of the prior statute, 'unless a prior adversary hearing is afforded the party against whom "any * * * writs and processes", including but not limited to, search warrants, "appropriate to carry out and enforce * * * this Act", are sought', would apply equally to Section 9 of the revised Act."

■ The Court in *Fontaine* clearly recognized the constitutional problems inherent in Section 9 of revised Article 527; however, since the section was not before the Court for consideration, it could only point to such problems. In

2. Section 9 reads:
Where possible and practical, obscene matter upon which prosecutions are based under the provisions of this article, should be obtained by peace officers or prosecuting attorneys without resorting to seizure of such matter pursuant to a search warrant. Where seizure of alleged obscene matter is necessary and practical, a search warrant to search for and seize such matter is expressly authorized. Moreover, no peace officer shall seize any obscene matter from the possession of any person except under the authority of a search warrant issued under the provisions of the Code of Criminal Procedure of Texas. Where practical, the matter alleged to be obscene shall be attached to the complaint to afford the issuing magistrate the opportunity to examine such materials to assist him in deciding whether the warrant shall issue. Where the alleged obscene matter is not available to present to the magistrate, the affiant or affiants to the complaint shall describe the alleged obscene materials in detail so as to assist the magistrate in deciding whether the warrant should issue. Moreover, where alleged obscene matter is not attached to the complaint, as in the case of motion pictures or statutes, the magistrate to whom the complaint is presented shall, where practical, personally view the matter alleged to be obscene before issuing the warrant. Where a search warrant is issued under the provisions of this section, only that matter described in the complaint shall be seized by the executing peace officer or officers. Nothing contained in this section shall prevent the obtaining of alleged obscene matter under injunction proceedings as authorized by this Act or by any other statute of the State of Texas.

the instant case, Section 9 is before this Court and we conclude that the procedures, set out in the section, which allow seizure of allegedly obscene materials without a prior adversary hearing and which allow the issuance of ex parte search warrants are constitutionally improper. The following remarks from Fontaine v. Dial, *supra*, at 438–439, furnish the basis for this Court's conclusion:

"The starting point with respect to plaintiff's contention that the failure to afford him a prior adversary hearing renders the seizure unconstitutional, is the Supreme Court case of Quantity of Copies of Books v. Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964). There the seizure by the Kansas Attorney General, pursuant to a search warrant, of allegedly obscene books, was held to violate the Fourteenth Amendment. Four of the justices were of the opinion that the owners of the books were constitutionally entitled to an adversary hearing on the issue of obscenity prior to the seizure of the books, 378 U.S. at 210—211, 84 S.Ct. 1723, and two other justices concurred in the judgment without finding it necessary to consider the procedural questions. *Id.* at 213—214, 84 S.Ct. 1723. Although that case was concerned with the seizure of *books* for subsequent destruction after a finding of obscenity, the rationale of the four justices has been held by other courts to apply with equal force to the seizure of motion picture film for subsequent use as evidence in criminal obscenity prosecutions. Tyrone, Inc. v. James B. Wilkinson, 410 F.2d 639 (4th Cir. 1969), affirming 294 F. Supp. 1330 (E.D.Va.1969); Metzger v. Pearcy, 393 F.2d 202 (7th Cir. 1968); Cambist Films, Inc. v. State of Illinois, 292 F.Supp. 185 (N.D. Ill.1968); Cambist Films, Inc. v. Tribell, 293 F.Supp. 407 (E.D.Ky.1968); Sayles v. Graham, No. 69—81—Phx., (D.Ariz.1969). In view of the foregoing authorities, this Court holds that the procedures followed by defendants in obtaining the search warrant, and in seizing the motion picture film after merely an *ex parte* judicial determination of probable cause, were constitutionally deficient.

"The states are constitutionally required to use sensitive procedural tools for separating protected expression from that narrowly defined class of expression called obscenity, which is not protected by the First Amendment. See Speiser v. Randall, 357 U.S. 513, 525, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958). The seizure of film after no more than an *ex parte* determination of probable cause is essentially a prior restraint of expression—especially inimical to the First Amendment—and clearly lacks the sensitivity required by the Constitution. In fact, any procedure less sensitive than an adversary hearing on the issue of obscenity prior to seizure of the film, fails to meet the constitutional requirements implicit in the First, Fourth, and Fourteenth Amendments."

Plaintiffs are therefore entitled to declaratory relief in regard to Section 9. However, because Section 9 is unconstitutional, it does not necessarily follow that revised Article 527 in its entirety is unconstitutional. The Legislature attached a severability clause to revised Article 527 and it is the opinion of this Court that Section 9 could be severed without affecting the other provisions. See Vernon's Texas Session Law Service: Tex.Laws 1969, ch. 468, § 2, at 1551. Severability would seem especially proper here since Section 9 does not define any substantive obscenity offense and since the *Fontaine* case, *supra*, sets out the correct procedural steps to follow in the enforcement of revised Article 527. Therefore, state officials, in enforcing the substantive sections of Article 527, can adopt such procedures as are sanctioned in *Fontaine, supra*, to secure, in a proper manner, evidence in support of prosecution.

### 3.

■ Plaintiffs assert that Section 1 of Article 527 is unconstitutional because the definition of obscenity fails to meet the constitutional requirements as set forth in Jacobellis v. State of Ohio, 378 U.S. 184, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1963) and other cases, in the following particulars:

(a) It omits the constitutionally essential element requiring a work to "go substantially beyond the customary limits of candor," using the nation as a whole to establish the standard. A work which does not go beyond the customary limits of candor in the nation as a whole, but which does go beyond such limits in the local region of the State of Texas would be condemned as obscene under the Amended Texas Statute.

(b) It fails to include the constitutional requirement that a work's appeal to a "prurient interest" be measured solely by its appeal to, and effect upon, the *average adult* in the nation as a whole.[3]

In regard to the first issue, this Court is of the opinion that the approach employed in Stein v. Batchelor, 300 F.Supp. 602 (N.D.Tex.1969), to meet this issue is the proper approach to be employed here. In *Stein, supra,* at 608, it is written:

"As to the Plaintiff's contention concerning contemporary community standard[s], we assume *arguendo* that national standards are constitutionally required. See Jacobellis v. Ohio, *supra,* 378 U.S. at 192–195, 84 S.Ct. 1676. This portion of Article 527

apparently has not been construed by the Texas courts. In our opinion Article 527 may reasonably be construed as merely rejecting 'local' (i. e. less than state-wide) community standards, and thus is not constitutionally deficient."

Section 1 of revised Article 527 may also be construed as suggested above. The phrase "contemporary community standards" is to be measured from a national perspective as is the phrase "beyond customary limits of candor."

■ Section 1(B) is also attacked because it fails to provide that a certain work's appeal is to be measured solely by its appeal to, and effect on, the *average adult.* Section 1(B) reads:

" 'Prurient interest' means a shameful or morbid interest in nudity, sex, or excretion, which goes substantially beyond customary limits of candor in description or representation of such matters. If it appears from the character of the material or the circumstances of its dissemination that the subject matter is designed for a specially susceptible audience, the appeal of the subject matter shall be judged with reference to such audience."

However, merely because there is no reference to *average adult* in the above section should not necessarily render it unconstitutionally defective; in fact, it appears that the section and statute can be read as a whole to imply an average adult standard. For example, the sexual deviant standard, which has been clearly approved by the Supreme Court in Mishkin v. New York, 383 U.S.

---

3. Section 1 reads:
(A) "Obscene" material means material (a) the dominant theme of which, taken as a whole, appeals to a prurient interest; (b) which is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) which is utterly without redeeming social value.
(B) "Prurient interest" means a shameful or morbid interest in nudity,

sex, or excretion, which goes substantially beyond customary limits of candor in description or representation of such matters. If it appears from the character of the material or the circumstances of its dissemination that the subject matter is designed for a specially susceptible audience, the appeal of the subject matter shall be judged with reference to such audience.

502, 508, 86 S.Ct. 958, 16 L.Ed.2d 56 (1966), indicates that, if matter is not directed toward a sexually deviant group, then an *average* group standard is to be used. The sexual deviant standard in the second sentence therefore defines the only instance when an average group standard would not be used. Further, since Section 4 of Article 527 states that another statute controls obscenity matters in regard to minors, it is apparent that this statute (Article 527) is directed toward and applicable to *adults*. Consequently, an *average adult* standard is called for under a proper construction of the statute and thus Section 1(B) is constitutionally acceptable.

### 4.

■ Plaintiffs also attack Section 1(F) of revised Article 527, which reads:

" 'Knowingly' means having actual or constructive knowledge of the subject matter. A person shall be deemed to have constructive knowledge of the contents if he has knowledge of facts which would put a reasonable and prudent man on notice as to the suspect nature of the material."

Specifically, Plaintiffs assert that Section 1(F) is unconstitutional because (1) it fails to require as an element of the crime that a defendant knew the press materials were obscene and further that the defendant intended to distribute such obscene materials and (2) it imposes upon a defendant constructive knowledge that the materials involved are in fact obscene.

Plaintiffs' contention goes beyond what the Supreme Court required and defined scienter to be in Smith v. California, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1960). The Supreme Court there found a strict liability ordinance to be an unconstitutional restriction on First Amendment rights and spoke of "knowledge" in terms of "notice of the character of the books they sold" at page 152, 80 S.Ct. at page 218 and "knowledge of the contents" at page

153, 80 S.Ct. 215 and "reason to suspect their obscenity" at page 151, 80 S.Ct. 215.

Furthermore, the Supreme Court in Smith v. California, *supra*, apparently gave its approval to a standard of constructive knowledge where "circumstances may warrant the inference that he (a seller) was aware of what a book contained." 361 U.S. at 154, 80 S.Ct. at 219. The defendants cite Ginsberg v. New York, 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968), which approved the following definition of knowingly in the New York Obscenity statute: " 'Knowingly' means having general knowledge of, or reason to know, or a belief or ground for belief which warrants further inspection or inquiry of both." In Mishkin v. New York, 383 U.S. 502, 86 S.Ct. 958, 16 L.Ed.2d 56 (1966), the Supreme Court approved the New York Court's statement of scienter when it construed an earlier version of the New York statute. Thus scienter was being "in some manner aware of the character of the material they attempt to distribute." 383 U.S. at 510, 86 S.Ct. at 964. The Supreme Court in *Ginsberg* found that the new statute had carried forward this constitutionally proper but very minimal construction. Therefore it was unnecessary for the Court "to define [further] today 'what sort of mental element is requisite to a constitutionally permissible prosecution,' " just as it had refused to do in Smith v. California.

Given the general language of the New York statute and the Georgia statute which was found to comply with "the scienter mandate" in Great Speckled Bird of the Atlanta Cooperative News Project v. Stynchcombe, 298 F. Supp. 1291 (N.D.Ga.1969), it is the opinion of this Court that the definition of knowingly in the Texas statute should be upheld. The Georgia statute also provides what is essentially a tort standard of negligence for the criminal intent requisite, just as the Texas statute does; it provides that knowledge is found if a person "reasonably should

know of the obscene nature of such matter." Consequently, Plaintiffs' challenge to Section 1(F) of revised Article 527 is not meritorious and it is the conclusion of this Court that the section is constitutional.

### 5.

■ Plaintiffs further assert that Section 13 of revised Article 527 is unconstitutional because it fails to define proper procedural safeguards to protect freedom of speech and press when the State, under color of State law, seeks to restrain freedom of press by use of the injunction remedy set out in the section.[4] However, in Fontaine v. Dial, *supra*, Section 13 was specifically suggested as a possible procedure which might be effectively utilized by the State of Texas in effectuating its public policy against the distribution or display of obscene motion picture film. Apparently, the three-Judge Court in *Fontaine*, by recommending the use of Section 13, was of the opinion that the section was not constitutionally suspect. In Gundlach v. Rauhauser, 304 F.Supp. 962, 964–966 (M.D.Penn.1969), the Court recognized the need of notice before any restraining order or injunction would issue and the need of necessary procedural safeguards to insure prompt and final judicial decision. Section 13 meets both these needs. Further, the Court stated at pages 965–966, in regard to a New York statute discussed in Commonwealth v. Guild Theatre, Inc., 432 Pa. 378, 248 A.2d 45

(1968), that a trial was provided within one day after joinder of issue and a decision was required within two days of the conclusion of trial. This New York statute, similar in important respects to Section 13, was also cited as a model in this area.

As indicated in the above discussion concerning the constitutionality of Section 9, it follows that a prior adversary hearing is required before the issuance of any order under Section 13 of Article 527, Texas Penal Code.

On the basis of these cases, Plaintiffs' constitutional objections to Section 13 are overruled and the section is found to be constitutional.

The above discussion has dealt with the primary constitutional challenges Plaintiffs have leveled at revised Article 527. Except for the invalidity of Section 9, this Court has concluded that the statute is constitutional and all other constitutional challenges forwarded in these cases should be overruled. Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957).

Accordingly, Defendants' Motions to Dismiss are here treated as Motions for Summary Judgment, as allowed under Rule 12(c) of the Federal Rules of Civil Procedure, and, as such, are sustained in part and denied in part. It is thus here declared that Article 527 of the Texas Penal Code, as amended, is constitutional, except for Section 9 of Article 527, which is here declared unconstitutional and is severed so as to

---

4. Section 13 reads:

The district courts of this state and the judges thereof shall have full power, authority, and jurisdiction, upon application by any district or county attorney within their respective jurisdictions, or the attorney general *to issue any and all* proper restraining orders, temporary and permanent injunctions, and any other writs and processes appropriate to carry out and enforce the provisions of this article. Such restraining orders or injunctions may issue to prevent any person from violating any of the provisions of this article. However, no restraining order or injunction shall issue except upon no-

tice to the person sought to be enjoined. Such person shall be entitled to a trial of the issues within one day after joinder of issue and a decision shall be rendered by the court within two days of the conclusion of the trial. In the event that a final order or judgment of injunction be entered against the person sought to be enjoined, such final order or judgment shall contain a provision directing the person to surrender to the sheriff of the county in which the action was brought any obscene matter in his possession and such sheriff shall be directed to seize and destroy such matter.

leave the remaining sections in force and effect. Consequently, all relief prayed for by Plaintiffs is denied, except for the declaration and judgment that Section 9 of Article 527 is unconstitutional.

Costs are taxed against Plaintiffs.