**ACADEMY, INC., et al.**

v.

**Carol VANCE, District Attorney of Harris County, Texas, et al.**

**Civ. A. No. 70–H–1115.**

United States District Court,
S. D. Texas,
Houston Division.

Nov. 13, 1970.

Clyde Woody, Marian Rosen, Woody & Rosen, Houston, Tex., for plaintiff.

Joe Moss, Michael Hinton, Houston, Tex., for Harris Co.

Edward Cazares, Houston, Tex., Joseph G. Rollins, for City of Houston.

Lonny Zwiener, Asst. Atty. Gen., Austin, Tex., for State of Texas.

Before INGRAHAM, Circuit Judge and SINGLETON and SEALS, District Judges.

## MEMORANDUM AND ORDER

SEALS, District Judge.

Plaintiffs are engaged in the operation of movie theaters in the City of Houston. On October 7, 1970, their theaters were the objects of a series of raids planned and perpetrated by law enforcement officials of Houston and Harris County. Plaintiffs were arrested under the authority of Article 527, Vernon's Ann.P.C., and charged with distribution of obscene motion pictures. Plaintiffs, alleging the unconstitutionality of Article 527, thereupon sought to convene a three-judge panel. Pending determination by such court of their request for a temporary injunction against enforcement of Article 527, plaintiffs applied for and obtained a temporary restraining order. Upon final determination by the three-judge panel,

plaintiffs pray for a permanent injunction prohibiting defendants, representatives of the City of Houston and Harris County, from enforcing Article 527 against them, and further request damages to each plaintiff in the amount of $15,000, as well as $25,000 in attorneys' fees. The State of Texas, exercising its prerogative of intervention in actions challenging the validity of statutes of statewide application, has been made a party to these proceedings.

The immediate question before this court is whether to grant a temporary injunction pending a hearing on the merits of the whole case. The problem is the collision between the Anti-Injunction Act and principles of comity on the one hand, and, on the other, the historic decision of the Supreme Court in Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965) and its confused progeny. The Anti-Injunction Act, 28 U.S.C. § 2283, bars a federal court from enjoining any pending criminal prosecution in a State court. Traditional principles of comity dictate that a federal court should not interfere with a State's good faith administration of its criminal laws. Douglas v. City of Jeanette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1943). But Dombrowski carved out a limited exception for those "preferred rights" protected by the first amendment.[1] In articulating this novel concept, the Court found that, not only will defense of a criminal prosecution not generally assure sufficient vindication of first amendment rights, but the

"* * * chilling effect upon the exercise of First Amendment rights may derive from the fact of the prosecution, unaffected by the prospects of its success or failure." Dombrowski, supra, 380 U.S. at 487, 85 S.Ct. at 1121.

Subsequent to Dombrowski, the Court made clear that its decision in that case should not be construed to give federal courts carte blanche to enjoin all State prosecutions about which they might entertain misgivings. Cameron v. Johnson, 390 U.S. 611, 88 S.Ct. 1335, 20 L.Ed. 2d 182 (1968). The test for determining the propriety of a federal court injunction to restrain the kind of prosecution at issue here was most clearly formulated by the Fifth Circuit in Sheridan v. Garrison, 415 F.2d 699 (5th Cir. 1969). The court there held that two elements must be present before such an order will issue:

"(1) a bad-faith use of the state's legal machinery with the purpose of inhibiting the exercise of the right of free speech (or, alternatively, the existence of a statute unconstitutional on its face affecting free speech) and (2) a probability of irreparable injury, which is established if there is a showing of a significant chilling effect on speech that cannot be avoided by state court adjudication." Sheridan, supra, at 709.

We assume without specifically so finding that plaintiffs have shown a probability of irreparable injury. That inquiry will not be necessary to a decision on the question of whether this court should issue a temporary injunction, since plaintiffs have failed to persuade the court either that defendants are acting in bad faith or that Article 527 is unconstitutional on its face. We will deal first with the statute.

In view of the Supreme Court's affirmance of Gable v. Jenkins, 309 F. Supp. 998 (N.D.Ga.1969), aff'd, 397 U.S. 592, 90 S.Ct. 1351, 25 L.Ed.2d 595 (1970), a three-judge court case which held constitutional a Georgia statute quite similar to Article 527,[2] our initial

---

1. The suggestion that first amendment rights are in a preferred position was first advanced by the Supreme Court in Murdock v. Pennsylvania, 319 U.S. 105, 115, 63 S.Ct. 870, 87 L.Ed. 1292 (1943).

2. The three-judge court upheld a Georgia statute, which reads, in pertinent part:
   "A person commits the offense of distributing obscene materials when he sells, lends, rents, leases, gives, adver-

inclination might be to label the Texas statute undeniably constitutional.[3] But Karalexis v. Byrne, 306 F.Supp. 1363 (D.Mass.1969) [4] a three-judge court case from Massachusetts, together with the Supreme Court's opinion in Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969),[5] persuades us to examine the question more closely. The Court's affirmance of *Gable* would seem to furnish the coup de grace to a broad interpretation of *Stanley*. But the presence of *Karalexis* on the Court's pending calendar [6] dispels such facile assurances.

■ In rendering a decision in *Karalexis*, the Supreme Court may at last specify the extent to which *Stanley* overrules Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957).[7] In anticipation of that elucidation, we shall postpone a final ruling on the merits of this case until *Karalexis* provides clarification of the current state of obscenity law. Whatever that decision, the present degree of uncertainty attending its outcome convinces this court that Article 527 cannot be adjudged unconstitutional on its face.

Plaintiffs' principal challenge is to the good faith of defendants in enforcing Article 527. Plaintiffs assert that the invalidity of the procedures employed to effect their arrests is demonstrative of the bad faith inherent in defendants' prosecution of them. Defendants, on the other hand, maintain that

tises, publishes, exhibits or otherwise disseminates to any person any obscene material of any description, knowing the obscene nature thereof, or who offers to do so, or who possesses such material with the intent so to do." Article 26–2101(a).

By comparison, § 3 of the Texas statute reads:

"Every person who knowingly: sends or causes to be sent, or brings or causes to be brought, into this state for sale or distribution, or in this state prepares for distribution, publishes, prints, exhibits, distributes, or offers to distribute, or has in his possession with intent to distribute or to exhibit or offer to distribute, any obscene matter is guilty of a misdemeanor."

3. Except for § 9, upon which defendants have not relied in this case.

4. The court in *Karalexis* issued a temporary injunction to prohibit prosecution pending a hearing on the merits. But the more significant aspect of the opinion is its candid analysis of the confusion which pervades the entire subject of obscenity:

"We confess that no oracle speaks to Karalexis unambiguously. Nonetheless, we think it probable that *Roth* remains intact only with respect to public distribution in the full sense, and that restricted distribution, adequately controlled, is no longer to be condemned. It is difficult to think that if Stanley has a constitutional right to view obscene films, the Court would intend its exercise to be only at the expense of a criminal act on behalf of the only logical source, the professional supplier.

A constitutional right to receive a communication would seem meaningless if there were no coextensive right to make it. * * * If a rich Stanley can view a film, or read a book, in his home, a poorer Stanley should be free to visit a protected theatre or library. We see no reason for saying he must go alone." Karalexis v. Byrne, 306 F.Supp. 1363, 1366–1367 (D.Mass. 1969), stay granted, 396 U.S. 976, 90 S.Ct. 469, 24 L.Ed.2d 447 and 486 (1969).

5. The Supreme Court held in *Stanley* that the States were constitutionally prohibited from making mere private possession of obscene material a crime. The Court was apparently concerned about the effect of such a ruling, for it added that

"*Roth* and the cases following that decision are not impaired by today's holding." *Stanley, supra*, at 568, 89 S.Ct. at 1249.

6. On March 23, 1970, the Court noted probable jurisdiction and set the case for oral argument. 397 U.S. 985, 90 S.Ct. 1123, 25 L.Ed.2d 394 (1970). At the end of the Court's term, on June 29, 1970, the case was restored to the calendar for reargument. 399 U.S. 922, 90 S.Ct. 2235, 26 L.Ed.2d 789 (1970).

7. A number of commentators have suggested that *Roth* and its progeny have been overruled, in whole or in part, by *Stanley*. See, e. g., The Supreme Court, 1968 Term, 83 Harv.L.Rev. 7, 147–154 (1969), and "Stanley v. Georgia: New Directions in Obscenity Legislation," 48 Texas L.Rev. 646 (1970).

they deliberately constructed a rather elaborate procedure precisely in order to avoid a charge of bad faith. We must therefore determine if that procedure is sufficient to comply with constitutional requirements.

The four officers who carried out the raids on plaintiffs' theaters were briefed by the district attorney's office prior to viewing the films. They were provided with specially prepared forms and given instructions regarding their assigned activities. The officers paid the admission price, viewed films in each of plaintiffs' theaters, and, immediately upon leaving each theater, completed the forms for them in advance. The officers described in detail on the forms both the films viewed and the employees against whom it was anticipated the arrest warrants would issue. A police photographer accompanied each officer and obtained pictures of the films.

Upon completion of these investigations, the collected information was presented to Justice of the Peace Hugo A. Touchy, who subsequently testified in this court that he was satisfied as to the existence of probable cause. The affidavits charging violation of Article 527 were filed in Judge Touchy's court, but, because of administrative difficulties,[8] were actually sworn to before Justice of the Peace Richard Millard. The arrest warrants were issued from the court of and signed by Judge Touchy. Arrests without warrant were made on two persons whom the officers subsequently observed in the act of showing films that were the subject of warrants previously issued by the magistrate.

The Texas Code of Criminal Procedure, Article 15.05, declares that a complaint is sufficient if it conforms to the following:

"1. It must state the name of the accused, if known, and if not known, must give some reasonably definite description of him.

2. It must show that the accused has committed some offense against the laws of the State, either directly or that the affiant has good reason to believe, and does believe, that the accused has committed such offense.

3. It must state the time and place of the commission of the offense, as definitely as can be done by the affiant.

4. It must be signed by the affiant by writing his name or affixing his mark."

We believe that defendants have fully met the statutory requirements.

The "Obscene Film Offense Report" which the officers completed as a basis for the complaints is a monument to thoroughness and detail. It includes data on the physical environment in which a film was being shown,[9] and a plethora of specifics that should enable a magistrate to reconstruct a film with accuracy.[10] When considered in con-

---

8. Judge Touchy had to be out of the courthouse during the afternoon on which the affidavits were sworn to before Judge Millard.

9. The officers noted the following: advertisements, both inside and outside the theater; price of admission; approximate seating capacity; approximate number in attendance; frequency of showings; hours of operation; sex of audience; approximate age range of audience; presence of alcoholic beverages; presence of obscene material available for sale; other obscene pictures, photographs, etc., displayed on the premises; any unusual activity among members of the audience; posting of age restrictions and degree of enforcement.

10. The officers noted the following: time film began and ended; title (if any); identification of producers, directors, studios listed on film credits; actors listed on film credits; type film (color/black and white, size of film in millimeters); description of plot (if any); setting and background; identifying characteristics of film as to period and nationality; number of actors, male and female; character of sexual activity (heterosexual, male or female homosexual, bisexual); description of types of sexual activity, including positions, in sequence; state of nudity at beginning and end of film; description of any acts of sexual perversion; angle of camera employed for sexual acts and sexual parts; sound,

junction with language in the complaint which tracks the wording of Article 527 as to the proscribed conduct, the information included in the report is sufficient to show that the affiant "has good reason to believe * * * that the accused has committed [some offense against the laws of the State]." Each suspect is identified by a "reasonably definite" description with regard to both physical appearance and employment function.[11] Each report specifies the "time and place of the commission of the offense," and each is signed by the officer making the investigation.

Plaintiffs would apply the teachings of Giordenello v. United States, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958), Barnes v. Texas, 380 U.S. 253, 85 S.Ct. 942, 13 L.Ed.2d 818 (1965), and Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1965) to invalidate the complaints in the instant case. These cases, which hold that authority to seize requires something more than the conclusory assertions of the arresting officer that an offense has been committed, have specifically been held *not* to apply to the issuance of an arrest warrant where no search is involved. Chapa v. State, 420 S.W.2d 943 (Tex.Cr.App.1967), Vallejo v. State, 408 S.W.2d 113 (Tex.Cr.App. 1966). The Court of Criminal Appeals declared in *Chapa* that

> "*Barnes* and *Aguilar* established standards for complaints upon which search warrants are issued, and those standards have no application to complaints which serve only as the basis for criminal prosecutions." *Chapa, supra*, 420 S.W.2d at 944.

Likewise, a number of the cases relied on by plaintiffs[12] to support the requirement of judicial scrutiny of the offending film are restricted to the question of the propriety of search warrants. Since the validity of arrest warrants is determined by quite different standards, these decisions can have no application to the case at bar.

Of even greater weight is the Fifth Circuit's recent decision that finally laid to rest any lingering discomfort about the validity of the procedures employed by defendants. In a supplementary opinion to United States v. Fragus, 428 F.2d 1211 (5th Cir. 1970), the court held that an arrest under an obscenity statute may be effected *under ordinary criminal processes* without a prior judicial determination of obscenity. The court based its reasoning on the Supreme Court's affirmance of Milky Way Productions, Inc. v. Leary, 305 F.Supp. 288 (S.D.N.Y.1969), aff'd, New York Feed Co. v. Leary, 397 U.S. 98, 90 S.Ct. 817, 25 L.Ed.2d 78 (1970). In that case, a three-judge court in New York declined to adopt plaintiffs' suggestion that constitutional fidelity demands that a magistrate conduct an adversary hearing on the question of obscenity before issuing a warrant of arrest:

> "It is inappropriate, we think, to 'weigh' (assuming we could) the relative impact of familiar criminal procedures against the innovation plaintiffs seek. It seems sufficient for our purposes that the supposed virtues of the departure they urge are not at all apparent and are directly antithetical to all pertinent indications in the Supreme Court's pronouncements implementing the First Amendment. The net effect of those expressions suggests that traditional criminal prosecutions, with their procedural safe-

---

including any offensive words or phrases; presence of subtitles; special equipment used by the investigator; purpose of film (e. g., purported history of censorship, medical documentary, suggestions for married couples).

11. The officers noted the following: name (if known); sex; race; approximate age; height; weight; build; hair; eyes; complexion; clothing; identifying char-

acteristics; apparent employment function; description of vehicle used by suspect.

12. Fontaine v. Dial, 303 F.Supp. 436 (N.D.Tex.1969); Entertainment Ventures, Inc. v. Brewer, 306 F.Supp. 802 (N.D.Ala.1969); Lee Art Theatre, Inc. v. Virginia, 392 U.S. 636, 88 S.Ct. 2103, 20 L.Ed.2d 1313 (1968).

guards, are surely permissible, and very possibly preferred, vehicles for enforcing bans against obscenity" *Milky Way Productions, supra,* at 297.

Plaintiffs raise the further contention that the arrest warrants are invalid because the affidavits were signed before Judge Millard and the warrants of arrest were issued by Judge Touchy. Plaintiffs mistakenly rely on Dujay v. State, 368 S.W.2d 613 (Tex.Cr.App. 1963) as authority for this proposition. The opinion recites, however, that

> "appellant was arrested * * * under a warrant issued out of Justice Court, Precinct No. 1 of Harris County, upon a complaint filed in said court * * *."

Nor does King v. State, 167 Tex.Cr.R. 440, 320 S.W.2d 677 (1959) assist plaintiffs, since the constitutional infirmity in that case arose as a result of a discrepancy between the signature on the warrant and the typed wording below the signature.

■ The testimony of Judge Touchy satisfies the court that the magistrate issued the arrest warrants only after he was fully apprised of the facts alleged in the officers' complaints, was convinced that the allegations were made in good faith, and was further persuaded that there was probable cause to believe that an offense had been committed. The mere substitution of one magistrate for another for the purpose of swearing to an affidavit fails, in view of the Texas cases, to make out a technical breach of the requirements for a valid arrest. Persuaded by the testimony of Judge Touchy that the spirit of the Code of Criminal Procedure has also been preserved, this court finds the arrest warrants at issue here to be valid.

■ In view of the Fifth Circuit's ruling in *Fragus,* and the defendants' commendable attempts to provide adequate safeguards to protect the rights of plaintiffs, the court finds that the procedures employed by defendants are not so constitutionally suspect as to foreclose the possibility that defendants will secure conviction for the alleged offenses, and hence, the prosecutions do not demonstrate that degree of bad faith necessary to compel the issuance of a temporary injunction.

Defendants assert that they have further demonstrated their good faith by long delaying the initiation of proceedings against plaintiffs. The District Attorney's representative testified that both his office and officials of the City of Houston agreed not to enforce Article 527 until after the three-judge court's decision in Newman v. Conover, 313 F.Supp. 623 (N.D.Tex.1970), which upheld the constitutionality of all of Article 527 except § 9, the seizure provision, which the court invalidated. Scrupulously observing the *Newman* court's condemnation of § 9, defendants have made no attempt to seize any of the films at issue here.

With respect, therefore, both to their procedure and to their restraint in enforcing the statute, defendants have demonstrated sufficient good faith to preclude this court's requiring that they refrain from further prosecution.[13] Even without considering the issue of good faith, the Supreme Court has recently dealt harshly with federal courts

---

13. Defendants' Second Amended Memorandum Brief of Law and Procedure raises two issues which are irrelevant for the purposes of a decision on the question of whether this court should grant a temporary injunction. Defendants ask the court to base its finding as to defendants' good faith in part on a determination of the offensiveness of the films at issue. The court at this time prefers to remain entirely neutral on the question of whether plaintiffs' films are obscene.

We merely assume that defendants are not wholly unreasonable in their judgment that the films are prohibited by Article 527.

In addition, defendants' repeated assertion, both in their briefs and in conferences with the court, that plaintiffs are reaping "huge and fantastic profits" is of no relevance, except possibly to confirm that plaintiffs will suffer irreparable injury unless we issue the temporary injunction.

which enjoin State criminal prosecutions in obscenity cases. In Byrne v. Karalexis, 396 U.S. 976, 90 S.Ct. 469, 24 L.Ed.2d 447 and 486 (1969), the Court stayed such a temporary injunction pending final disposition of the case on the merits. Mr. Justice Black expressed the view that may well signal the full-blown resurrection of § 2283:

"In this case a Federal District Court stepped into the middle of a pending state criminal prosecution, rendered an opinion in effect deciding the fundamental constitutional issue in the state case, and enjoined the initiation of new prosecutions of these defendants or the execution of any sentence imposed on them in the pending state case. One of the fundamental aspects of our federal constitutional system requires that federal courts refrain from interfering in pending state criminal prosecutions except in nighly unusual and very limited circumstances. I do not think the facts of this case present an occasion for departure from that general rule." Byrne v. Karalexis, *supra*, at 982, 90 S.Ct. at 474.

Plaintiffs are hereby granted a hearing on the merits of this case, to be held before this court at 10:00 A.M. on Monday, December 14, 1970, in courtroom number 5, 515 Rusk, Houston, Texas.

Plaintiffs' application for a temporary injunction with regard to all pending and prospective prosecutions [14] under Article 527, V.A.P.C., is hereby denied, except that § 9 of Article 527 is declared to be unconstitutional in accordance with the ruling of Newman v. Conover, 313 F.Supp. 623 (N.D.Tex. 1970).

The clerk will file this Memorandum and Order and provide counsel for all parties with true copies.

SINGLETON, District Judge (dissenting).

With due respect and concurrence in the acknowledged public policy against the exhibiting of obscene films as expressed by the Texas Legislature, I must dissent from this Court's denial of plaintiffs' application for a temporary injunction with regard to all pending and prospective prosecutions under Tex.Rev. Civ.Stat.Ann. art. 527 (1969).

I feel that the two criteria of Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965) have been met by the plaintiffs. However, it should first be noted that no travesty of the traditional comity lines in the federal-state relationship has occurred for in the instant case the state criminal prosecutions have "begun" only in a technical sense with the filing of an information or indictment, and this is not a case in which trial proceedings are under way. *See* Sheridan v. Garrison, 415 F.2d 699, 708 (5 Cir. 1969).

As to the requisites of *Dombrowski, supra*, the plaintiffs have shown bad faith in their attempted prosecutions in that they have done by means of a back door the very thing a federal three-judge court said they could not do by a constitutionally protected front door. *See* Newman v. Conover, 313 F.Supp. 623 (1970). There the court declared that Section 9 of the Texas obscenity law was unconstitutional because it allowed an ex parte search and seizure warrant to seize allegedly obscene materials without affording the affected party a prior adversary hearing on the issue of obscenity. That court made the following pertinent remarks in regard to searches and seizures in obscenity cases:

"The starting point with respect to plaintiff's contention that the failure to afford him a prior adversary hearing renders the seizure unconstitutional, is the Supreme Court case of

14. The court, satisfied that defendants will continue to observe constitutional requirements in the prosecution of obscenity cases, will not distinguish here between pending and future prosecutions.

Quantity of Copies of Books v. Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L. Ed.2d 809 (1964). There the seizure by the Kansas Attorney General, pursuant to a search warrant, of allegedly obscene books, was held to violate the Fourteenth Amendment. Four of the justices were of the opinion that the owners of the books were constitutionally entitled to an adversary hearing on the issue of obscenity prior to the seizure of the books, 378 U.S. at 210–211, 84 S.Ct. 1723, and two other justices concurred in the judgment without finding it necessary to consider the procedural questions. *Id.* at 213–214, 84 S.Ct. 1723. Although that case was concerned with the seizure of books for subsequent destruction after a finding of obscenity, the rationale of the four justices has been held by other courts to apply with equal force to the seizure of motion picture film for subsequent use as evidence in criminal obscenity prosecutions. Tyrone, Inc. v. James B. Wilkinson, 410 F.2d 639 (4th Cir. 1969), affirming 294 F.Supp. 1330 (E. D.Va.1969); Metzger v. Pearcy, 393 F.2d 202 (7th Cir. 1968); Cambist Films, Inc. v. State of Illinois, 292 F. Supp. 185 (N.D.Ill.1968); Cambist Films, Inc. v. Tribell, 293 F.Supp. 407 (E.D.Ky.1968); Sayles v. Graham, No. 69–81–Phx., (D.Ariz.1969). In view of the foregoing authorities, this Court holds that the procedures followed by defendants in obtaining the search warrant, and in seizing the motion picture film after merely an *ex parte* judicial determination of probable cause, were constitutionally deficient."

In the instant case the arrests were tantamount to a search for it effectively deprived the owners of the movie houses of their employees and hence, the pragmatic reality of operating their businesses. All of this was done without a prior adversary proceeding to determine if the material was in fact obscene and con-

sequently, the presence of probable cause that a crime was being committed.

My two brothers have suggested that the Fifth Circuit case of United States v. Fragus, 428 F.2d 1211 (5th Cir. 1970) stands in direct opposition to the assertion that a prior adversary proceeding is necessary. Yet, the *Fragus* court itself states that a different standard may be called for if it had been dealing with subject matter such as a "movie exhibited in a public theater." That case can also be distinguished on the fact that Fragus himself plead guilty to the issue that the material was obscene and no prior hearing was requested or objected to by his retained counsel.

My brothers would also urge that the holding of Milky Way Productions, Inc. v. Leary, 305 F.Supp. 288 (S.D.N.Y. 1969), aff'd, New York Feed Co. v. Leary, 397 U.S. 98, 90 S.Ct. 817, 25 L.Ed. 2d 78 (1970) is conclusive on the issue of whether or not it is necessary to hold a prior adversary proceeding before commencing arrest in criminal prosecutions in obscenity cases. *Milky Way's* holding that such a prior adversary hearing is not required was arrived at on distinguishable facts. In *Milky Way* the plaintiffs had the theory of laches invoked against them for they waited months after their arrests before seeking federal relief. The plaintiffs in the case at bar filed for federal relief within a few days after the arrest. Unlike the present case a decisive factor of pandering was involved in *Milky Way*.

The majority opinion herein states that the Supreme Court's recent stay of a temporary injunction in Byrne v. Karalexis, 396 U.S. 976, 90 S.Ct. 469, 24 L.Ed.2d 447 and 486 (1969) is the death blow to any attempt to enjoin state proceedings. However suggestive that measure by the high court may be, it is not definitive on the issue at bar for the *Karalexis* proceedings had advanced to the appeal stage.

It must be assumed that the prosecutors in the instant case were aware of the technical controversy that surrounded their action and the inferences of the unconstitutionality of the searches of § 9 that they were indirectly tracking with their arrests. Indeed, the Supreme Court of Texas in State of Texas v. Scott and Cinne Arts, Inc., 460 S.W.2d 103 (1970) by Justice Calvert, suggests that prior adversary hearings to determine obscenity are a vital part of § 13 of article 527 in the State's obscenity prosecutions. On the same day the Texas Supreme Court in Ex parte Noland, 462 S.W.2d 572 (Tex. Supreme Court, Nov. 11, 1970), said that as a matter of law a ticket taker could not be held accountable for the production in court of an allegedly obscene film. This latter opinion suggests that the arresting of ticket takers and projectionists is not the appropriate avenue for the proper prosecution of the Texas obscenity law.

Twenty-seven people were arrested in the cases at bar, including all types of personnel from the movie houses. The state prosecutors in public newscasts, in chambers, and in open court repeatedly asserted they would continue to arrest and prosecute until they "shut these places down." There were threats and intimidating remarks in the newscasts that patrons would be arrested in future "raids." All this would seem harassingly excessive to any good faith prosecution of the statutes.

The chilling effect of such action in the delicate area of First Amendment freedoms is too rudimentary to necessitate documentation.

I wish to make it clearly understood that in this dissent I voice a determined opinion that pragmatically speaking there is no difference, on these facts, between a search, as prohibited by the *Newman* court, and an arrest in the absence of a prior adversary proceeding where obscenity *vel non* would be determined. *See* Entertainment Ventures, Inc. v. Brewer, 306 F.Supp. 802 (N.D. Ala.1969).