**UNITED STATES of America**

**v.**

**Michael G. THEVIS and Peachtree News Company, Inc.**

**No. 70-72-Cr-J.**

United States District Court,
M. D. Florida,
Jacksonville Division.

June 25, 1971.

John L. Briggs, U. S. Atty., Joseph W. Hatchett, Asst. U. S. Atty., Jacksonville, Fla., Larry Butcher, Justice Department, Washington, D. C., for the Government.

Robert E. Smith, Towson, Md., Norman J. Abood, Jacksonville, Fla., for defendants.

## MEMORANDUM OPINION AND ORDER

FISHER, District Judge.

The Defendants, Michael G. Thevis and Peachtree News Company, Inc., entered a plea of not guilty to a twelve-count indictment charging them with violations of a Federal Obscenity Statute, to wit, Title 18, U.S.C., Section 1462.[1] Count One of the indictment charges, " * * * that the Defendants, Michael G. Thevis and Peachtree News Company, Inc., did wilfully and knowingly cause a common carrier to be used for the carriage in interstate commerce of obscene, lewd, lascivious and filthy writings or prints, to wit: 38 copies of magazines entitled "Duo," from Atlanta, State of Georgia, to Springfield News Company, Jacksonville, Florida." The remaining eleven counts of the indictment are identical to Count One with the exception of the alleged obscene material, to wit, Count Two, 10 copies of magazines entitled "Boys and Their Male Lovers;" Count Three, 20 copies of magazines entitled "Domino;" Count Four, 5 copies of magazines entitled "Love Knot;" Count Five, 5 copies of magazines entitled "Wanton;" Count Six, 110 copies of magazines entitled "My Boys;" Count Seven, 5 copies of magazines entitled "In and Its Nice;" Count Eight, 6 copies of magazines entitled "The Girlfriends;" Count Nine, 10 copies of magazines entitled "Pussy Willow;" Count Ten, 10 copies of magazines entitled

1. "Whoever brings into the United States, or any place subject to the jurisdiction thereof, or knowingly uses any express company or other common carrier, for carriage in interstate or foreign commerce—

"(a) any obscene, lewd, lascivious, or filthy book, pamphlet, picture, motion-picture film, paper, letter, writing, print, or other matter of indecent character * * *" shall be guilty of an offense against the laws of the United States.

"Arcadia;" Count Eleven, 10 copies of magazines entitled "Teenage Jaybird;" and Count Twelve, 10 copies of magazines entitled "Cloud 9."

The offenses described in Counts One through Seven are alleged to have occurred April 24, 1970, and the offenses described in Counts Eight through Twelve are alleged to have occurred May 6, 1970.

Pre-trial motions challenging the sufficiency of the indictment and requesting a stay of proceedings were denied by the trial court and the Supreme Court. The Government and the Defendants executed and filed Waivers of a Jury Trial and entered into Stipulations of Fact, and the case proceeded to trial by the Court sitting without a jury. After the conclusion of the evidence, oral arguments were heard and the Court took the case under advisement, allowing counsel for the Government and the Defendants to file written briefs.

Although the Defendants entered a plea of not guilty to each of the twelve counts of the indictment, insisting that the Government meet its burden of proof in adducing evidence beyond a reasonable doubt to each and every element of the alleged offense, no serious contest was made of the fact that the material was transported in interstate commerce on or about the dates alleged in the indictment and that both of the Defendants, Michael G. Thevis and Peachtree News Company, Inc., had knowledge of the contents of the magazines and knowledge of the interstate shipment.

The Defendants contend that the publications contain primarily pictures of either males with males, or females with females, or males with females at the most engaged in simulated activity involving primarily psuedo foreplay. Therefore, their argument continues, said magazines cannot be considered obscene in the constitutional sense and are entitled to First Amendment protection absent the actual depiction of sexual acts where no imagination is required to see the act in progress, such as that which shows insertion or genital travel in the actual act of intercourse or sodomy, or actual acts of cunnilingus or fellatio, in other words, "hard-core pornography;" Defendants further contend that if in fact, there is any redeeming social value in the materials, they may not be proscribed; and further, if the materials are disseminated to willing adults in an adults-only environment and are not disseminated to juveniles or pandered or foisted upon an individual wishing to avoid confrontation with them, the materials may not be proscribed.

The Government, on the other hand, contends that the publications in question contain either males with males, or females with females, or males with females depicting simulated acts of intercourse or other sexual acts in such a manner as to be held obscene under the basic test first pronounced in Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), and later elaborated upon by A Book Named "John Cleland's Memoirs of a Woman of Pleasure" v. Massachusetts, 383 U.S. 413, 418, 86 S.Ct. 975, 977, 16 L.Ed.2d 1 (1966), where the Supreme Court stated the requirements to be as follows:

" '[W]hether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest.' * * * Under this definition as elaborated in subsequent cases, three elements must coalesce: It must be established that (a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value."

The issue for the Court to determine is whether or not the material in the magazines in question is obscene. In this regard, there is absolutely no possi-

bility for doubt that the material in the twelve types of magazines depicts pornography in its gross, most vulgar and offensive form, but, for the Defendants to be found guilty of the offenses alleged in the indictment, the Court must find the magazines to be obscene in a constitutional sense, and therefore not entitled to First Amendment protection.

Our task has been made considerably easier by the Supreme Court's recent opinions in United States v. Reidel, 402 U.S. 351, 91 S.Ct. 1410, 28 L.Ed.2d 813 (1971) and United States v. Thirty-Seven (37) Photographs, 402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971). In *Reidel*, the Court declared that the First Amendment is not violated by the application of Section 1461 of Title 18, U.S.C., which forbids the use of the mails to deliver obscene matter, to the distribution of obscene material to willing recipients who state that they are adults. Likewise, in *Thirty-Seven Photographs*, the Court held that the First Amendment is not violated by the application of Title 19, U.S.C., Section 1305(a), which authorizes the Government to seize at the port of entry into the United States obscene matter privately possessed by a person who intends it for commercial distribution.

In the years between *Roth* in 1957 and *Reidel* and *Thirty-Seven Photographs* in 1971, certain Supreme Court decisions seemed to narrow the permissible scope of regulation of allegedly obscene material. See Jacobellis v. Ohio, 378 U.S. 184, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964); Ginzburg v. United States, 383 U.S. 463, 86 S.Ct. 942, 16 L.Ed.2d 31 (1966); Redrup v. New York, 386 U.S. 767, 87 S.Ct. 1414, 18 L.Ed.2d 515 (1967); Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969). Under these decisions and others, Carlos v. New York, 396 U.S. 119, 90 S.Ct. 395, 24 L.Ed.2d 303 (1969); Cain v. Kentucky, 397 U.S. 319, 90 S.Ct. 1110, 25 L.Ed.2d 335 (1970); Bloss v. Dykema, 398 U.S. 278, 90 S.Ct. 1727, 26 L.Ed.2d 230 (1970); Walker v. Ohio, 398 U.S. 434, 90 S.Ct. 1884, 26 L.Ed.2d 385 (1970); Hoyt v. Minnesota, 399 U.S. 524, 90 S.Ct. 2241, 26 L.Ed.2d 782 (1970); Bloss v. Michigan, 402 U.S. 938 91 S.Ct. 1615, 29 L.Ed.2d 106 (1971),[2] it would appear that a new doctrine of First Amendment protection had evolved, and it would not be accurate to state categorically that the First Amendment did not protect obscenity.

In *Jacobellis*, the Court reversed a conviction under a state statute for the exhibition of an obscene motion picture. The Court reiterated the standard that a work cannot be proscribed unless it is "utterly without redeeming social importance," and hence material that deals with sex in a manner that advocates ideas, or that has literary or scientific or artistic value or any other form of social importance, may not be held obscene and denied constitutional protection.

In *Ginzburg*, defendant was convicted of violating the federal obscenity statute by mailing three publications that dealt exclusively with sex. Besides testimony as to the merit of the material, abundant evidence was introduced that each of the publications was originated or sold as stock in trade of the business of pandering, i. e., the purveying of publications openly advertised to appeal to the customers' erotic interest. The Supreme Court affirmed the conviction, holding that the defendant had deliberately represented the publications as erotically arousing and had commercially exploited them as erotica solely for the sake of prurient appeal. In other words, the gravamen of the offense was "pandering."

In *Redrup*, the Court handed down a decision in which it found specific books and magazines not "obscene in the constitutional sense" under the three criteria stated in *Roth* and *Memoirs*. The real significance of the opinion, how-

---

2. These are all cases involving state convictions reversed per curiam without opinions citing *Redrup*.

ever, is the Court's dictum that certain publications are not protected by the First Amendment. The Court went on to say that if objectionable material is "pandered," "obtrusively" advertised, or placed in an environment in which it is likely to fall into the hands of children, it can be constitutionally suppressed.

Subsequent to *Redrup,* the Supreme Court considered the issue of obscenity from a somewhat different viewpoint in Stanley v. Georgia. There, pornographic films were found in Stanley's home, and he was convicted under Georgia statutes for possessing obscene material. The Court concluded that the state has no legitimate interest in controlling what an adult reads in the privacy of his home and that the mere private possession of obscene matter cannot constitutionally be made a crime. But the Court neither overruled nor disturbed the holding in *Roth,* using the following language in *Stanley* at page 568, 89 S. Ct. at page 1749:

> "*Roth* and the cases following that decision are not impaired by today's holding. As we have said, the States retain broad power to regulate obscenity; that power simply does not extend to mere possession by the individual in the privacy of his own home * * *"

Since *Stanley,* a few of the lower courts have construed the decision narrowly but apparently correctly, holding that an individual only has a right to possess obscene material in the privacy of his home. United States v. Melvin, 419 F.2d 136 (4th Cir. 1969); United States v. Fragus, 422 F.2d 1244 (5th Cir. 1970), supplementing its earlier opinion June 23, 1970 (No. 27801); Ga-ble v. Jenkins, 309 F.Supp. 998 (N.D. Ga. 1969) (three-judge court), aff'd 397 U.S. 592, 90 S.Ct. 1351, 25 L.Ed.2d 595 (1970). However, a considerable number of the lower courts have given Stanley a broader interpretation, holding that if the Government has no interest in preventing a citizen from reading books and watching films in the privacy of his home, then it can have no interest in preventing him from acquiring obscene material. United States v. B & H Dist. Corp., 319 F.Supp. 1231 (W.D. Wis.1970), vacated and remanded, 403 U.S. 927, 91 S.Ct. 2248, 29 L.Ed.2d 705 (1971); United States v. Orito, No. 70–CR–20 (E.D.Wis. Oct. 28, 1970), appeal docketed, 39 U.S.L.W. 3333 (No. 1276 Jan. 26, 1971); Stein v. Batchelor, 300 F.Supp. 602 (N.D.Tex.1969), vacated and remanded on proced. grds. sub nom. Dyson v. Stein, 401 U.S. 200, 91 S.Ct. 769, 27 L.Ed.2d 781 (1971); Karalexis v. Byrne, 306 F.Supp. 1363 (D.Mass. 1969), vacated and remanded on proced. grds., 401 U.S. 216, 91 S.Ct. 777, 27 L. Ed.2d 792 (1971); United States v. Lethe, 312 F.Supp. 421 (E.D.Cal.1970); Childs v. Oregon,[3] 300 F.Supp. 649 (D. C.1969), rev'd 431 F.2d 272 (9th Cir. 1970), rev'd 401 U.S. 1006, 91 S.Ct. 1248, 28 L.Ed.2d 542 (1971); United States v. 35 M.M. Motion Picture Film,[4] 312 F. Supp. 1382 (S.D.N.Y.), rev'd 432 F.2d 705 (2nd Cir. 1970), writ dismissed on other grds. United States v. Unicorn Enterprises, Inc., 403 U.S. 925, 91 S.Ct. 2241, 29 L.Ed.2d 704 (June 15, 1971); United States v. Reidel, Crim. No. 5845 (C.D.Cal.1970) (three-judge court).

As best we can read the obscenity decisions, the Supreme Court has never specifically held, the nearest thing being

---

3. In *Childs,* the lower court found the material not obscene and not so obtrusive as to force it upon an unwilling individual. The Appellate Court reversed this decision and found the material obscene. This decision was reversed by the Supreme Court on the basis of *Redrup.*

4. In *35 M.M. Motion Picture Film,* the lower court found the material obscene and an offensive affront to community standards. The Appellate Court reversed the decision and found the material not obscene. However, the higher court did state that its holding was based on adult standards and that it was possible that a prosecution might succeed under a statute showing concern for juveniles. The Government's Motion to Dismiss based on *Thirty-Seven Photographs* was granted.

the dictum in *Redrup*, that obscene material may receive First Amendment protection unless such material is disseminated to unconsenting adults and children or is pandered. On the other hand, many of the lower courts have specifically held that before objectionable material can be constitutionally suppressed, it must be pandered, obtrusively disseminated, or placed in an environment in which it is likely to fall into the hands of children. Poulos v. Rucker, 288 F.Supp. 305 (N.D.Ala. 1968); United States v. 77 Cartons of Magazines, 300 F.Supp. 851 (N.D.Cal. 1969); United States v. Baranov, 293 F.Supp. 610 (D.C.) rev'd 418 F.2d 1051 (9th Cir. 1969); Childs v. Oregon, *supra*; United States v. 35 M.M. Motion Picture Film, *supra*; United States v. Thirty-Seven (37) Photographs, 309 F.Supp. 36 (C.D.Cal. 1970) (three-judge court); United States v. Reidel, *supra*. However, there is one recent Ninth Circuit Court of Appeals case, Miller v. United States, 431 F.2d 655 (1970), which not only held the distribution of the obscene material to be "pandering," but also held that the indiscriminate and wholesale distribution of the obscene material with reckless disregard of the identity and age of the recipient was a violation of Title 18, U.S.C., Sections 1461 and 1462.

Since the evidence in our case does not involve obtrusive dissemination or an environment in which the material is likely to fall into the hands of juveniles, and the magazines in question were not pandered, in following the decisions based on *Redrup*, we might be expected to find the Defendants not constitutionally guilty of interstate transportation of obscene material. But *Reidel* and *Thirty-Seven (37) Photographs* have now clarified beyond question that obscene material regardless of how or to whom disseminated is not within the scope of First Amendment protection. *Roth* has been reaffirmed with all of its original vitality. In *Reidel*, Justice White said: "*Roth* has not been overruled. It remains the law in this Court and governs this case." Similarly, in

*Thirty-Seven (37) Photographs*, he said: "As we held in Roth v. United States * * * obscenity is not within the scope of first amendment protection." Further, in discussing the District Court opinion in *Reidel*, and the application of the *Stanley* decision, Justice White observed:

"The District Court ignored both *Roth* and the express limitations on the reach of the *Stanley* decision. Relying on the statement in *Stanley* that 'the Constitution protects the right to receive information and ideas * * * regardless of their social worth,' 394 U.S., at 564, 89 S.Ct. at 1247, the trial judge reasoned that 'if a person has the right to receive and possess this material, then someone must have the right to deliver it to him.' He concluded that Sec. 1461 could not be validly applied 'where obscene material is not directed at children, or it is not directed at an unwilling public, where the material such as in this case is solicited by adults. * * *'

"The District Court gave *Stanley* too wide a sweep. To extrapolate from Stanley's right to have and peruse obscene material in the privacy of his own home a First Amendment right in Reidel to sell it to him would effectively scuttle *Roth*, the precise result that the *Stanley* opinion abjured. Whatever the scope of the 'right to receive' referred to in *Stanley*, it is not so broad as to immunize the dealings in obscenity in which Reidel engaged here—dealings which *Roth* held unprotected by the First Amendment."

*Reidel*, at 4 and 5.

We can now say for certain that obscenity need not involve the three enumerated areas, i. e., "pandering" or "dissemination to unconsenting adults or children," in order for it to be proscribed and constitutionally suppressed. Therefore, under the facts of our case, we find that the magazines in question are obscene and that the Defendants are

not protected by the First Amendment. The evidence adduced clearly proves beyond a reasonable doubt that the male and female homosexual material appeals to the prurient interest in sex of these clearly defined deviant groups; further, that the female with male publications appeal to a prurient interest in sex of an average person of the community. Second, the Court finds that the magazines involved in each of the twelve counts are patently offensive because they offend beyond a reasonable doubt contemporary community standards as well as national standards relative to sexual matters; third, the Court finds beyond a reasonable doubt that said magazines named in each of the twelve counts are utterly without redeeming social value; and finally, the Court finds beyond a reasonable doubt that the Defendants wilfully and knowingly caused the magazines described in each of the twelve counts to be transported in interstate commerce by common carriers.

Therefore, it is ordered and adjudged that the Defendants, Michael G. Thevis and Peachtree News Company, Inc., are guilty of the charges contained in each of the twelve counts of the indictment, and each of the Defendants is instructed to appear before the Court for the purpose of being sentenced.