Arlene BRYERS, Appellant,

v.

The STATE of Texas, Appellee.

No. 44667.

Court of Criminal Appeals of Texas.

May 31, 1972.

Clyde W. Woody, Marian S. Rosen, Houston, for appellant.

Carol S. Vance, Dist. Atty., and Michael J. Hinton, Asst. Dist. Atty., Houston, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

Appellant, a ticket taker in a "stag" theater in Houston, was convicted for exhibiting an obscene film in violation of Article 527, Vernon's Ann.P.C. (Supp.1972). A $200 fine was assessed as punishment.

On October 6, 1970, Houston Police Detective Richard See, accompanied by a police photographer, went to the Mini Park theater, paid the admission price and proceeded to view two films. Acting under Officer See's direction, the photographer took pictures of certain frames or scenes in the movies. After leaving the theater, See completed in some detail an "Obscene Film Offense Report" which had been prepared by the District Attorney's staff. Included in this report was a physical description of employees seen in the theater at the time the film was shown.

On October 8th, members of the District Attorney's staff and other police officers involved in similar investigations gathered in the office of Justice of the Peace Touchey for the purpose of obtaining arrest warrants for persons observed in the various theaters investigated. Notwithstanding substantial "administrative difficulties" in the swearing process, the magistrate was presented with an affidavit by Officer See, the "Obscene Film Offense Report" and the pictures which had been taken at the Mini Park. Based on this evidence, a finding of probable cause was made and arrest warrants for twenty-eight persons (including appellant) were issued over Judge Touchey's signature. Appellant was arrested the same day.

The record before us makes clear that appellant's arrest was not an isolated incident; consequently, shortly after numerous similar arrests were effected, attorneys for appellant filed an action in federal court on behalf of several movie operators seeking permanent injunctions against further state action in the instant obscenity prosecutions. A three-judge court was convened, heard extensive testimony and ultimately held that federal injunction intervention in the pending state obscenity prosecutions would be improper because the requisite " '. . bad-faith use of the state's legal machinery with the purpose of inhibiting the exercise of the right of free speech. . . . ' " had not been demonstrated. Academy, Inc. v. Vance, 320 F.Supp. 1357, 1358 (S.D.Tex. Nov. 13, 1970) (3 judge court).

The only evidence introduced by the State in the instant case as to the contents of the film was the testimony of Officer See and three photographs which a police photographer had taken while Office See was viewing the films. From the officer's testimony, it appears that the two films portrayed homosexual contacts between nude males. In one film, the "House of Gang Bang", the nude episodes involved multiple parties and occurred around a swimming pool. The scene then shifted to a bedroom where several males were shown undressing, "french kissing", caressing each other's bodies, including (in the officer's words) "closeup shots of the other man's hand rubbing the private parts of his partner." Several scenes purported to show anal and oral sodomy taking place

between naked males although the officer admitted on cross examination that penetration was not visible and the sexual activity may have been simulated. There was little action or conversation that was not related to the various sexual contacts.

The second film, entitled "A Peter from Paris", contained similar nauseam except that the encounters were limited to two males. Both films were spliced together and covered thirty to forty-five minutes. At the time of the showing observed by the officer, eight men were in the audience.

The three photographs of frames from the film are now before this court on appeal. Due to the poor resolution of the images, the photographs are difficult to interpret. Thus, for example, while it is self-evident that some type of contact is being made between naked persons, taken apart from the other testimony in the record, one cannot determine whether the participants are male or female.

Rather than follow the order in appellant's brief, we shall consider the grounds of error in order of their logical priority.

The first contention urged is that the trial court erred in failing to quash the information because the county court did not have either personal or subject matter jurisdiction. To support this conclusion appellant advances *inter alia*,[1] the proposition that the federal constitution requires an adversary hearing on obscenity of the suspect materials prior to *any* institution of the criminal process, and that absent such a hearing all proceedings are void.[2] We are of the belief that such a proposition is not and should not be the law, and appellant has cited us to no authority which convinces us otherwise.

Appellant relies primarily on Marcus v. Property Search Warrant, 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961), and A Quantity of Books v. Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964).

1. Appellant's other contentions as to jurisdiction have no merit; we overrule them without further discussion.

2. Appellant makes a somewhat similar argument that the proceedings were "void" on the ground that the procedure utilized here occurred pursuant to the old § 9 of Article 527, Vernon's Ann.P.C., a section which had been held unconstitutional in Fontaine v. Dial, 303 F.Supp. 436, 438 (W.D.Tex.1969) (3 judge court), appeal dism'd for lack of jurisdiction, 399 U.S. 521, 90 S.Ct. 2235, 26 L.Ed.2d 779 and Newman v. Conover, 313 F.Supp. 623 (N.D.Tex.1970) (3 judge court). The provisions of § 9. which these federal decisions held unconstitutional can be found in Tex.Laws 1969, 61st Leg., ch. 468, § 9, at p. 1549–1550. This section was repealed and replaced by a new § 9, Tex.Laws 1971, 62nd Leg., ch. 887, at p. 2723–2724. The new section appears in codification in the 1972 pocket parts of Article 527, Vernon's Ann.P.C.

The section which had been declared invalid dealt with the procedure to obtain a search warrant leading to the seizure of allegedly obscene materials. Since there was neither search warrant or seizure in the instant case, the procedure involved did not involve the de-

fective provisions, and the arrest, therefore, was not tainted by their invalidity.

Moreover, appellant has not submitted and our research has failed to disclose any authority even remotely suggesting that the action of a police photographer who has entered a theater as a paying customer in taking photographs in an unobtrusive and non-disruptive fashion *in itself* constitutes a "search" within the meaning of the Fourth Amendment or Article I, § 9, Texas Constitution Vernon's Ann.St. or Code of Criminal Procedure.

The mere fact that the applicable statute at the time the arrest was made failed to provide for an adversary hearing prior to issuance of a search warrant does not make the statute unconstitutional on its face. Hunt v. State, 475 S.W.2d 935, 937 (Tex.Cr.App.1972) ; Gable v. Jenkins, 309 F.Supp. 998 (N.D. Ga.1969) (3 judge court), aff'd, 397 U.S. 592, 90 S.Ct. 1351, 25 L.Ed.2d 595 (1970) (per curiam) ; Stein v. Batchelor, 300 F.Supp. 602, 608 (N.D.Tex.1969) (3 judge court), judgment vacated and remanded for reconsideration on jurisdiction, sub nom. Dyson v. Stein, 401 U.S. 200, 91 S.Ct. 769, 27 L.Ed.2d 781 (1971) (per curiam) ; Newman v. Conover, supra, 313 F.Supp. at 628; Fontaine v. Dial, supra, 303 F.Supp. at 438.

While it is true that perhaps a majority of decisions have read *Marcus* and *Books* as requiring an adversary hearing on obscenity prior to seizure of an allegedly obscene film pursuant to a search warrant,[3] the authorities are sharply in conflict as to whether an adversary hearing on obscenity must precede a seizure which occurs incident to an ordinary arrest.[4] But where, as in the instant case, nothing is seized incident to the arrest, the absence of an adversary hearing on obscenity prior to the arrest does not vitiate or taint the legality of the subsequent proceedings as long as the ordinary requirements of probable cause are satisfied.[4A]

■ Appellant also urges that Article 527, *supra*, is so vague that it is unconstitutional on its face. The statutory definition of "obscenity", Article 527 § 1, tracks almost word-for word the language of the Supreme Court in Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957); A Book Named "John Cleland's Memoirs of a Woman of Pleasure" v.

---

3. Newman v. Conover, supra note 2, 313 F.Supp. at 627; Fontaine v. Dial, supra, 303 F.Supp. at 438; Tyrone v. Wilkinson, 410 F.2d 639 (4th Cir. 1969); Metzger v. Pearcy, 393 F.2d 202 (7th Cir. 1968); Demich, Inc. v. Ferdon, 426 F.2d 643 (9th Cir. 1970); Bethview Amusement Corp. v. Cahn, 416 F.2d 410, 411 (2nd Cir. 1969), cert. den., 397 U.S. 920, 90 S.Ct. 929, 25 L.Ed.2d 101; Cambist Films, Inc. v. Duggan, 420 F.2d 687 (3rd Cir. 1969); Astro Cinema Corp., Inc. v. Mackell, 422 F.2d 293 (2nd Cir. 1970); United States v. Alexander, 428 F.2d 1169 (8th Cir. 1970); Flack v. Municipal Court, 66 Cal.2d 981, 59 Cal.Rptr. 872, 429 P.2d 192 (1967).

Cf. Hanby v. State, 479 P.2d 486 (Alaska 1970) (issue discussed but not decided).

*Contra* Commonwealth v. State Amusement Corp., 356 Mass. 715, 248 N.E.2d 497 (1969); State v. Osborne, 117 N.J. Super. 409, 285 A.2d 43 (1971); People v. Heller, 29 N.Y.2d 319, 327 N.Y.S.2d 628, 277 N.E.2d 651, cert. granted — U.S. —, 92 S.Ct. 1765, 32 L.Ed.2d 115 (May 15, 1972); State ex rel. Howard v. O'Connell, 53 Wis.2d 248, 192 N.W.2d 201 (1971).

*See generally* Comment, Prior Adversary Hearing on the Question of Obscenity, 70 Colum.L.Rev. 1403, 1417–18 (1970); Note, The Right to an Adversary Hearing on the Issue of Obscenity Prior to the Seizure of Furtively Distributed Films, 69 Mich.L.Rev. 913, 921–26 (1971).

4. The following cases involved seizure of allegedly obscene materials incident to an arrest. For decisions holding that an adversary hearing on obscenity is *not* required *see* United States v. Fragus, 428 F.2d 1211, 1212 (5th Cir. 1970); United States v. Wild, 422 F.2d 34, 37–38 (2nd Cir. 1969); Adler v. Pomerleau, 313

F.Supp. 277, 286 (D.Md.1970) (3 judge court); Rage Books, Inc. v. Leary, 301 F.Supp. 546 (S.D.N.Y.1969); Amato v. Ruth, 332 F.Supp. 326, 330–331 (W.D. Wis.1970); Davison v. State, 251 So.2d 841 (Fla.1971); Roaden v. Commonwealth, 473 S.W.2d 814 (Ky.App.1971); Johnson v. Commonwealth, 475 S.W.2d 893 (Ky.App.1972).

*Cf.* Drive Inn Theatres, Inc. v. Huskey, 435 F.2d 228, 231 (4th Cir. 1970) (issue discussed but not decided).

*Contra* City News Center, Inc. v. Carson, 310 F.Supp. 1018, 1021–1022 (M.D. Fla.1970); Meyer v. Austin, 319 F.Supp. 457, 463–464 (M.D.Fla.1970) (3 judge court) (*Fragus* distinguished); Delta Books Distributors, Inc. v. Cronvich, 304 F.Supp. 662, 667 (E.D.La.1969) (3 judge court), rev'd in part and vacated in part and remanded on jurisdictional questions sub nom. Perez v. Ledesma, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971); Entertainment Ventures, Inc. v. Brewer, 306 F.Supp. 802, 809 (M.D.Ala.1969); Cambist Films, Inc. v. State of Illinois, 292 F.Supp. 185 (N.D.Ill., E.D.1968).

Until this confusion is clarified by the Supreme Court, certainly the safer prosecutorial practice appears to lie in the recently enacted revision of § 9 and § 13 of Article 527, Vernon's Ann.P.C., rather than attempting seizure incident to an arrest.

4A. In so holding, we agree with the federal panel which has already scrutinized the propriety of the arrest in question. Academy, Inc. v. Vance, supra, 320 F. Supp. at 1361–1362. *Accord* Milky Way Productions, Inc. v. Leary, 305 F.Supp. 288, 296–297 (S.D.N.Y.1969) (3 judge court), aff'd, 397 U.S. 98, 90 S.Ct. 817, 25 L.Ed.2d 78 (1970) (per curiam); United States v. Green, 284 A.2d 879 (D.C.App.1971); People v. Morgan, 326 N.Y.S.2d 976 (N.Y.City Ct.1971).

Massachusetts, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966), and Mishkin v. New York, 383 U.S. 502, 86 S.Ct. 958, 16 L.Ed. 2d 56 (1966). The vagueness contention is overruled.

■ And, by supplemental brief, it is argued that Article 527, supra, is also unconstitutional on its face in violation of the First Amendment in that the statute fails to require either "pandering", an obtrusive showing (invasion of privacy), a specific concern for juveniles, or "hard-core pornography" as a precondition for a conviction. Such an argument is without merit.

■ According to appellant, these necessary requirements are said to flow from a synthesis of Redrup v. New York, 386 U.S. 767, 87 S.Ct. 1414, 18 L.Ed.2d 515 (1967), *Redrup's* progeny of per curiam reversals, and Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969). In the first place, evidence of "pandering" is, indeed, " . . . relevant to the application of the *Roth* test. . . .", but relevant in such a way as to *narrow* First Amendment protection. Ginzburg v. United States, 383 U.S. 463, 471, 86 S.Ct. 942, 947, 16 L.Ed.2d 31 (1966). Where "pandering" is shown, the material may be found constitutionally obscene even though otherwise not in violation of the *Roth-Memoirs'* standards. Ginzburg v. United States, supra, 383 U.S. at 470–473, 86 S.Ct. 942; Hunt v. State, 475 S.W.2d 935, 937 (Tex.Cr.App.1972) (by implication).

Secondly, despite some lower court authority to the contrary.[5]

"[n]othing in *Redrup* changes the scope or effect of these added 'tests.' There is no support in that or any other decision of the Supreme Court for the view that they must be satisfied *in addition* to the three tests of *Memoirs* before a finding

of obscenity is permissible. . . . ." Milky Way Productions, Inc. v. Leary, 305 F.Supp. 288, 294 (S.D.N.Y.1969) (3 judge court), aff'd, 397 U.S. 98, 90 S.Ct. 817, 25 L.Ed.2d 78 (1970) (per curiam).

Finally, as for the contention that the logic of *Stanley* somehow limited *sub silentio* the *Roth-Memoirs'* test, we need only turn to the unequivocal language of Mr. Justice White, speaking for a majority of the Court, in United States v. Reidel, 402 U.S. 351, 91 S.Ct. 1410, 1412–1413, 28 L. Ed.2d 813 (1971):

"The District Court gave *Stanley* too wide a sweep. To extrapolate from *Stanley's* right to have and peruse obscene material in the privacy of his own home a First Amendment right in Reidel to sell it to him would effectively scuttle *Roth,* the precise result that the *Stanley* opinion abjured. Whatever the scope of the 'right to receive' referred to in *Stanley,* it is not so broad as to immunize the dealings in obscenity in which Reidel engaged here—dealings that *Roth* held unprotected by the First Amendment.

. . . .

" . . . *Roth* has squarely placed obscenity and its distribution outside the reach of the First Amendment and they remain there today. *Stanley* did not overrule *Roth* and we decline to do so now."

After *Reidel,* therefore, we finally

" . . . can now say for certain that obscenity need *not* involve the three enumerated areas, i.e., 'pandering' or 'dissemination to unconsenting adults or children,' in order for it to be proscribed and constitutionally suppressed. . . ." (Emphasis added.) United States v. Thevis, 329 F.Supp. 265, 269 (M.D.Fla. 1971).[6]

---

5. See, e. g., United States v. 4,400 Copies of Magazines, etc., 276 F.Supp. 902, 904 (D.Md.1967) (5 judges sitting en banc).

6. Even though similar attacks on Article 527 have been repeatedly rejected, such

contentions seem to have an amazing capacity to reappear full strength. At least eight decisions have sustained the statute against broadside constitutional attack. *See,* e. g., Stein v. Batchelor,

■■ These threshold issues aside, we turn now to the primary question presented by this appeal: can a conviction for exhibition of an obscene film be sustained where the film itself is not introduced into evidence before the fact-finder in the trial court?[7]

For some reason there is a dearth of direct holdings on the issue, possibly because prosecutions in other jurisdictions have not been attempted without the film or perhaps because the post-*Roth* opinions have thought the question so manifestly elementary as to obviate the necessity of comment. Our own analysis must begin with the statute.

The tripartite definition of obscenity, in accordance with Supreme Court decisions, is given as follows:

"'Obscene' material means material (a) the dominant theme of which, taken as a whole, appeals to a prurient interest; (b) which is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) which is utterly without redeeming social value." Article 527 § 1(A), Vernon's Ann.P.C. (Supp.1972).

■ At this late date, no one could seriously challenge the assertion that part (a) of the standard, i.e., "the dominate theme of which, *taken as a whole*, appeals to a prurient *interest*" (emphasis added), means that the particular object (be it book, magazine, drama, photograph collection or film) can only be judged obscene after consideration of the allegedly objectionable aspects in the context of the entire work.[8] Indeed, *Roth* has landmark significance precisely because it explicitly rejected the approach of Regina v. Hicklin, 3 Q.B. 360 (1868), which had permitted ". . . material to be judged merely by the effect of an isolated excerpt upon particularly susceptible persons. . . ." Roth v. United States, supra, 354 U.S. at 488–489, 77 S.Ct. at 1311. The State does not contend otherwise.

But, according to the State, the standard of *Roth* and Article 527 § 1(A) (a) does not absolutely compel the introduction of the material into evidence. Rather, it is argued, the command to consider the material "as a whole" amounts to no more than a mere prohibition against finding obscenity based on isolated excerpts taken out of the context of the entire work and that consideration of the "whole," so interpreted, can be more than satisfied without introduction of the material itself, such as the instant case where the jury considered pictures taken from the film and heard the

supra note 2; Newman v. Conover, supra note 2; Fontaine v. Dial, supra note 2; Academy, Inc. v. Vance, supra; Hunt v. State, supra; State v. Scott, 460 S.W. 2d 103 (Tex.1970); Carter v. State, 388 S.W.2d 191 (Tex.Cr.App.1965); Moore v. State, 470 S.W.2d 391, 393–394 (Tex. Civ.App.—San Antonio 1971, writ ref'd n. r. e.).

7. We frame the issue in these narrow terms even though there is a further defect in this cause in that the film is not brought forward to this court. Consequently, we cannot exercise our own independent, constitutionally required judgment as to the obscenity *vel non* of the material in question. Hunt v. State, supra, 475 S.W.2d at 936; Longoria v. State, 479 S.W.2d 689 (Tex.Cr. App.). But since the holding of the instant appeal is that a conviction under Article 527 cannot be upheld unless the film is introduced into evidence at trial, this defect is unimportant because a film, like any other exhibit which has been admitted into evidence below, can be made a part of the record and transmitted to this court on appeal.

8. Kahm v. United States, 300 F.2d 78, 82–83 (5th Cir. 1962) (by implication), cert. den. 369 U.S. 859, 82 S.Ct. 949, 8 L.Ed.2d 18; William Goldman Theatres, Inc. v. Dana, 405 Pa. 83, 173 A.2d 59, 66 (1961).

The view still prevails on the Supreme Court. See Rabe v. Washington, 405 U.S. 313, 92 S.Ct. 993, 31 L.Ed.2d 258, (March 20, 1972) (Chief Justice Burger concurring) (by implication).

officer's testimony as to length, title, dialogue and action.

The argument, while admittedly ingenious, is not persuasive, and the precedents, although scarce, are squarely contrary to the State's position. Most directly in point is Zenith International Film Corp. v. Chicago, 291 F.2d 785 (7th Cir. 1961) (test for obscenity can be properly applied only when the entire film is viewed).[8A]

Consider also, for example, the following language in a case cited by the State:

". . . In view of the fact that the film itself is perhaps the best evidence, or *at least indispensable evidence*, on the question as to its nature, and of the fact that films are often cut or altered for showing at different theatres, it is important to establish the *exact content* of the film as exhibited on the occasion giving rise to the prosecution." (Emphasis added.) Cambist Films, Inc. v. Duggan, 298 F.Supp. 1148, 1152 at f. n. 4 (W.D.Pa.1969) (dicta), rev'd on other grounds, 420 F.2d 687 (3rd Cir. 1969).

And in United States v. West Coast News Co., 228 F.Supp. 171, 178 (W.D. Mich., S.D.1964), aff'd, 357 F.2d 855 (6th Cir.1966), rev'd per curiam citing Redrup, 388 U.S. 447, 87 S.Ct. 2095, 18 L.Ed.2d 1309 (1967), the district court said:

"The clear import of the 'book as a whole' test set out in the Roth case, supra, is that the book necessarily must be read from *beginning to end*, and in a normal fashion, in order to ascertain its character. . . ." (Emphasis added.)

And as a further consequence of the "taken as a whole" standard, it has even been stated that unless police officers view the entire contents of a film, they cannot validly have probable cause to believe that the movie is obscene.[9] If a viewing of the entire film is the necessary condition precedent to establishment of probable cause, certainly *a fortiori* the fact-finder at trial must view the entire material before it makes the ultimate judgment that, "taken as a whole", the film appeals to the prurient interest.

Even assuming *arguendo* that we were persuaded the "taken as a whole" standard did not require the introduction of the material into evidence, we would have serious reservations as to the wisdom and propriety of the procedure utilized in the instant case in light of the fact that the finder must also conclude that the material is "utterly without redeeming social value." Article 527 § 1(A) (c). While it is true that in some cases, perhaps many cases, there is no conceivable claim by anyone as to the "social value" of the material, we have doubts as to whether the determination as to "social value", if any, of a film could be said to have been fairly arrived at where the determination depended completely on the subjective impression of a police officer or other witness, no matter how detailed the description and even when bolstered by still photographs of individual frames thought to be most offensive.

In conclusion, we hold that the evidence is insufficient to sustain an obscenity conviction unless (1) the alleged obscene matter, in this case a film, is introduced into evidence or (2) the defendant expressly and affirmatively stipulates or admits that the material is obscene under the standards stated in Article 527 § 1(A). The mere fact, however, that a defendant offers to stipulate as to obscenity

---

**8A.** *Cf.* also People v. Enskat, 20 Cal.App. 3d Supp. 1, 98 Cal.Rptr. 646 (1971) (use of evidence other than the film discussed in terms of the so-called "best evidence" rule).

**9.** Hosey v. City of Jackson, 309 F.Supp. 527, 534 (S.D.Miss.1970) (3 judge court), vacated and remanded on jurisdiction, 401 U.S. 987, 91 S.Ct. 1221, 28 L.Ed.2d 525 (1971) ; Cambist Films, Inc. v. Duggan, supra, 298 F.Supp. at 1152; Hanby v. State, 479 P.2d 486, 493 (Alaska 1970) ; Entertainment Ventures, Inc. v. Brewer, 306 F.Supp. 802, 810 at f. n. 11 (M.D.Ala., N.D.1969) (3 judge court) (dicta).

does not preclude the State from introducing it; the stipulation only serves to remove from the State the burden of putting the material into evidence.

It should be unnecessary to observe that the holding in the instant case is a matter of procedure only; accordingly, in its present posture we cannot express a legal conclusion as to the character of the material in the case at bar, notwithstanding our personal responses of disgust and repulsion. The legislature has made certain activities in obscenity the subject of criminal liability, and, with the exception of private possession for personal use, Stanley v. Georgia, supra, the federal constitution does not immunize those properly convicted from the sanctions imposed.

And a vigorous enforcement of these laws in the area of motion pictures is not inconsistent with the evidentiary rule here announced. In response to the action of the courts § 9 of Article 527, supra, has

been reenacted with substantial modifications which detail the procedure to be followed in seizing a film or other allegedly obscene material with a search warrant. Tex.Laws 1971, 62nd Leg., ch. 887 at p. 2723, effective August 30, 1971, appearing in Article 527 § 9, Vernon's Ann.P.C. (Supp.1972).[10]

Nor is the criminal process the only remedy available to the State. Article 527 § 13 authorizes injunctive proceedings, and the section has been held constitutional, State v. Scott, 460 S.W.2d 103 (Tex.1970), and has recently been effectively utilized to enjoin the sale of obscene films. Moore v. State, 470 S.W.2d 391 (Tex.Civ.App.— San Antonio 1971, writ ref'd n. r. e.).

In light of our disposition, appellant's other grounds of error will not be considered.[11] For the reasons stated, the judgment is reversed and the cause remanded.

---

10. We are aware of the practical difficulties faced by law enforcement officials in attempting to comply with the procedures inherent in an adversary hearing *prior* to seizure. In that connection, we observe that the legislature has expressly authorized protective orders to prevent a film's removal from the jurisdiction or alteration, Art. 527 § 9(d), and a knowing violation of those orders is made a separate offense. Art. 527 § 9(e). We note further that the courts have consistently indicated that conduct designed to subvert or by-pass the administration of justice will not be permitted merely because obscenity litigation may involve the sensitive procedural tools of the First Amendment area. See especially Demich, Inc. v. Ferdon, supra note 3. See also Tyrone v. Wilkinson, supra note 3, 410 F.2d at 641; Astro Cinema Corp., Inc. v. Mackell, supra note 3, 422 F.2d at 296; United States v. Alexander, supra note 3, 428 F.2d at 1176; Fontaine v. Dial, supra note 2, 303 F.Supp. at 438, fn. 3.

11. Because of the peculiarity of obscenity litigation, it may be useful to make one further comment concerning the some-

what anomalous requirement of Art. 527 § 7 (Supp.1972). Section 7 provides that in addition to the ordinary general verdict, the jury " . . . must render a special verdict . . . . ", and the form of the special verdict is also there set out. It is a fair inference from the special verdict form suggested that the title or a description of the allegedly obscene matter must be included in the submission to the finder. Since the statute appears to require submission of title or description, it would be prudent to give careful attention to the drafting of accusatory pleadings.

Even more unusual, the requirements of the section apply to the "findings" or "verdict" or the *court* where a jury is waived. Since special written findings by the court are not a common feature of criminal practice in this state, trial judges should be cognizant of Art. 527 § 7 and either use a special form or incorporate explicit findings in similar language in the judgment.

In the instant case, the special verdict form was not submitted to the jury, but error was not properly preserved. Articles 36.14 and 36.15, Vernon's Ann.C.C.P.